IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERICA IACOBUCCI, | : |
| *Plaintiff*, | : |
| v. | : Case No.: 24-698 |
| STOELZLE GLASS USA, INC., | : COMPLAINT IN CIVIL ACTION |
| *Defendant.* | : |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, Erica Iacobucci, by and through the undersigned counsel, J.P. Ward & Associates, LLC, and, specifically, Justin M. Bahorich, Esquire, who files the within Complaint against Defendant, Stoelzle Glass USA, Inc., of which the following is a statement:

### PARTIES

1. Plaintiff, Erica Iacobucci (hereinafter "Ms. Iacobucci" or "Plaintiff"), is an adult individual who currently resides at 1208 Irwin Street, Aliquippa, PA 15001.

2. Defendant, Stoelzle Glass USA, Inc. (hereinafter "Stoelzle" or "Defendant"), is a Delaware corporation with its headquarters located at 400 9th Street, Monaca, PA 15061.

### JURISDICTION AND VENUE

3. Jurisdiction is proper as Ms. Iacobucci brings this Complaint under the Americans with Disabilities Act, 29 U.S.C. § 12101, *et seq.* (hereinafter "ADA"), the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 (hereinafter "PHRA").

4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

5. Venue is proper in the Western District of Pennsylvania under 28 U.S.C. § 1391(b) in that this is the district in which the claims arose.

6. On October 12, 2022, Plaintiff dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC").

7. On January 31, 2024, the EEOC issued a Notice of Right to Sue.

8. On February 9, 2024, Plaintiff's counsel received and viewed the Notice of Right to Sue.

9. Plaintiff has exhausted all her administrative remedies under the ADA and the PHRA. *Miller v. City Mission*, No. 2:23-CV-834, 2023 WL 9002732, (W.D. Pa. Dec. 28, 2023).

## **FACTUAL ALLEGATIONS**

10. In or around September of 2021, Ms. Iacobucci initiated her employment with Stoelzle as a Process Auditor on the Production Line.

11. At all times relevant, Ms. Iacobucci is disabled insofar as she suffers from asthma, ADHD, anxiety, depression and PTSD.

12. Ms. Iacobucci's disabilities have a substantial impact on her major life activities, including but not limited to, breathing, concentrating, working, thinking and sleeping.

13. Ms. Iacobucci was fully qualified to perform all the essential duties of her job.

14. While employed by Stoelzle, Ms. Iacobucci was subjected to horrid working conditions, which included repeated and frequent instances of broken glass on the floor, rats emerging from holes in the walls and running around workstations, damp floors from a variety of unknown liquids, foul odors at the workstations and rotting food in the lunchroom.

15. These conditions exacerbated Ms. Iacobucci's asthma, which made it difficult for her to work and impacted her disabilities after she left work.

16. Although Ms. Iacobucci notified her supervisor that she had to miss work because of the unsanitary and hazardous work conditions, Stoelzle did not take action to correct the working conditions.

17. In November 2021, Ms. Iacobucci received a verbal warning for attendance issues.

18. In January 2022, Ms. Iacobucci contracted COVID-19 and was forced to miss additional days of work.

19. Subsequently, Ms. Iacobucci submitted a medical leave form, which Stoelzle in turn submitted to third-party company, NY Life (hereinafter "NY Life").

20. Upon information and belief, NY Life was acting as Stoelzle's agent when it reviewed and made determinations regarding Ms. Iacobucci's requests.

21. The medical leave form indicated that Ms. Iacobucci was a disabled individual and made certain requests for reasonable accommodations, including reduction of the required overtime shifts and intermittent leave.

22. Ms. Iacobucci also submitted paperwork to request reasonable accommodations under the ADA.

23. In March 2022, NY Life only approved Ms. Iacobucci's request for company-approved short-term disability leave but denied the other without any explanation.

24. Upon information and belief, Stoelzle approved this request because it would temporarily permit the company to use insurance to pay Ms. Iacobucci.

25. On March 31, 2022, Ms. Iacobucci's treating physician submitted a second request for reasonable accommodations on her behalf.

26. Stoelzle denied the request and Ms. Iacobucci was forced to miss additional days of work due to the continued unsanitary and hazardous work conditions.

27. On April 20, 2022, Stoelzle issued Ms. Iacobucci a 3-day suspension for attendance issues.

28. When Ms. Iacobucci attempted to explain that she was forced to miss work due to the unsanitary work conditions exacerbating her disability, Stoelzle once again directed her to fill out the company's request for reasonable accommodations.

29. On April 28, 2022, Ms. Iacobucci's treating physician submitted a third request for reasonable accommodations on her behalf.

30. As part of this request, Ms. Iacobucci's treating physician recommended that Ms. Iacobucci be prevented from working overtime and be permitted to use her inhaler at work.

31. Additionally, Ms. Iacobucci's treating physician requested that Ms. Iacobucci be allowed to use FMLA continuous leave for the days of work she missed from January 18, 2022, to April 28, 2022, and FMLA intermittent leave from April 29, 2022, to September 1, 2022.

32. On April 30, 2022, Stoelzle terminated Ms. Iacobucci's employment.

33. Stoelzle terminated Ms. Iacobucci's employment in retaliation for her repeated requests for accommodation.

## COUNT I
## DISCRIMINATION IN VIOLATION OF
## THE ADA AND THE PHRA

34. Ms. Iacobucci incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

35. To establish a *prima facie* case of discrimination under the ADA, Plaintiff must show: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of his job, with or without reasonable accommodations by the

employer; and (3) he suffered an otherwise adverse employment decision as a result of discrimination. See *McGlone v. Philadelphia Gas Works*, 17-1399, 2018 WL 2193658, at *2 (3d Cir. May 14, 2018) (citing *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)

36. The PHRA is modeled similarly to the ADA and shares similar burdens. The analytical framework used to evaluate a disability discrimination claim under the PHRA is effectively indistinguishable from that under the ADA, thus allowing courts to dispose of both ADA and PHRA claims on the same grounds. *Bialko v. Quaker Oats Co.*, 434 F. App'x. 139, 142 n.5 (3rd Cir. 2011) (citing *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002) (noting that the PHRA, in all "relevant respects," was "basically the same as the ADA" and was interpreted "in accord" with the ADA and related case law, thus meaning that "disposition of [plaintiff's] ADA claim applie[d] with equal force to his PHRA claim")).

37. Ms. Iacobucci is disabled within the meaning of the ADA and the PHRA.

38. Ms. Iacobucci was highly qualified for the position she held with Defendant.

39. Defendant repeatedly refused Ms. Iacobucci's requests for reasonable accommodations.

40. Ms. Iacobucci requested reasonable accommodations on April 28, 2023.

41. Defendant terminated Ms. Iacobucci on April 30, 2022.

42. The discriminatory termination was specifically related to Ms. Iacobucci's disability.

43. As a direct and proximate cause of the aforementioned conduct, Ms. Iacobucci suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

44. As set forth hereinabove, Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience, such that the imposition of punitive damages is appropriate.

WHEREFORE, Plaintiff, Erica Iacobucci, hereby requests this Honorable Court consider the above and grant relief in her favor and against Defendant and award her back pay, front pay, compensatory and punitive damages, , and costs and reasonable attorney's fees, and such other relief as deemed just and proper.

## COUNT II
## FAILURE TO ACCOMMODATE IN VIOLATION OF
## THE ADA AND THE PHRA

45. Ms. Iacobucci incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

46. The elements of a claim for failure to accommodate an employee's disability are: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith. *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 320 (3d Cir. 1999) (citing *Mengine v. Runyon*, 114 F.3d 415, 419-20 (3d Cir. 1997)).

47. The ADA prohibits "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such [employer]." 42 U.S.C. § 12112(b)(5)(A).

48. An undue hardship entails "significant difficulty or expense in, or resulting from, the provision of the accommodation." *Walton v. Mental Health Ass'n. of Se. Pennsylvania*, 168 F.3d 661, 670 (3d Cir. 1999) (citing 29 C.F.R. § 1630, App. § 1630.2(p)).

49. The PHRA is modeled similarly to the ADA and shares similar burdens. The analytical framework used to evaluate a disability discrimination claim under the PHRA is effectively indistinguishable from that under the ADA, thus allowing courts to dispose of both ADA and PHRA claims on the same grounds. *Bialko v. Quaker Oats Co.*, 434 F. App'x. 139, 142 n.5 (3rd Cir. 2011) (citing *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002) (noting that the PHRA, in all "relevant respects," was "basically the same as the ADA" and was interpreted "in accord" with the ADA and related case law, thus meaning that "disposition of [plaintiff's] ADA claim applie[d] with equal force to his PHRA claim")).

50. Ms. Iacobucci was disabled within the meaning of the ADA and the PHRA.

51. Defendant was aware of Ms. Iacobucci's disabilities.

52. Defendant repeatedly refused Ms. Iacobucci's requests for reasonable accommodations.

53. Ms. Iacobucci requested reasonable accommodations on April 28, 2023.

54. Defendant terminated Ms. Iacobucci on April 30, 2022, just two days after she requested accommodations.

55. Ms. Iacobucci could have been reasonably accommodated but for the Defendant's lack of good faith.

56. Defendant failed to demonstrate that granting Ms. Iacobucci's requests for reasonable accommodations imposed an undue hardship.

57. As a direct and proximate cause of the aforementioned conduct, Ms. Iacobucci suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

58. As set forth hereinabove, Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience, such that the imposition of punitive damages is appropriate.

WHEREFORE, Plaintiff, Erica Iacobucci, hereby requests this Honorable Court consider the above and grant relief in her favor and against Defendant and award her back pay, front pay, compensatory and punitive damages, , and costs and reasonable attorney's fees, and such other relief as deemed just and proper.

## COUNT III
### RETALIATION AND WRONGFUL TERMINATION IN VIOLATION OF THE ADA AND THE PHRA

59. Ms. Iacobucci incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

60. The ADA prohibits employees from retaliating against employees. 42 U.S.C. § 12203(a). To establish a claim for retaliation, a plaintiff must prove: "(1) that she engaged in a protected employee activity; (2) that she was subject to an adverse action by the employer either subsequent or contemporaneous with the protected activity; and (3) that there is a causal connection between the protected activity and the adverse actions." *Lackey v. Heart of Lancaster Regl. Med. Ctr.*, 704 Fed. Appx. 41, 49-50 (3d Cir. 2017) (citing *Williams v. Phila. Hous. Auth. Police Dep't.*, 380 F.3d 751, 759 (3d Cir. 2004).

61. The PHRA is modeled similarly to the ADA and shares similar burdens. The analytical framework used to evaluate a disability discrimination claim under the PHRA is

effectively indistinguishable from that under the ADA, thus allowing courts to dispose of both ADA and PHRA claims on the same grounds. *Bialko v. Quaker Oats Co.*, 434 F. App'x. 139, 142 n.5 (3rd Cir. 2011) (citing *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002) (noting that the PHRA, in all "relevant respects," was "basically the same as the ADA" and was interpreted "in accord" with the ADA and related case law, thus meaning that "disposition of [plaintiff's] ADA claim applie[d] with equal force to his PHRA claim")).

62. Ms. Iacobucci is disabled within the meaning of the ADA and the PHRA, and thus is a member of a protected class.

63. Ms. Iacobucci engaged in the protected employee activity of requesting reasonable accommodations.

64. Two days after Ms. Iacobucci requested accommodations for the third time, Defendant terminated Ms. Iacobucci's employment.

65. Defendant's actions can only be viewed as retaliatory and possessing a causal connection to Ms. Iacobucci's request for reasonable accommodations.

66. As a direct and proximate cause of the conduct, Ms. Iacobucci suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

67. As set forth hereinabove, Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience, such that the imposition of punitive damages is appropriate.

WHEREFORE, Plaintiff, Erica Iacobucci, hereby requests this Honorable Court consider the above and grant relief in her favor and against Defendant and award her back pay, front pay,

compensatory and punitive damages, , and costs and reasonable attorney's fees, and such other relief as deemed just and proper.

**JURY TRIAL DEMANDED.**

                                                Respectfully Submitted,

                                                **J.P. WARD AND ASSOCIATES, LLC**

Date: May 9, 2024                           By: _____
                                                Justin M. Bahorich (Pa. I.D. No. 329207)

                                                J.P. Ward and Associates, LLC
                                               The Rubicon Building
                                               201 South Highland Avenue
                                               Suite 201
                                               Pittsburgh, PA 15206

                                               *Counsel for Plaintiff*